UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                                                             Case No.: 2:15-cr-13-FtM-38CM

MICHAEL J. RONGA
_____/

### ORDER[1]

This matter comes before the Court on Defendant Michael Ronga's Motion for Judgment of Acquittal (Doc. #70) and Motion for New Trial (Doc. #71) filed on September 14, 2015.  The Government filed responses to Defendant's motions (Doc. #75; Doc. #76) on September 28, 2015.  Defendant has replied (Doc. #79; Doc. #80), therefore, these motions are ripe for review.

### BACKGROUND

Defendant is a former deputy with the Lee County Sheriff's Office ("LCSO").  On May 5, 2013, Defendant provided Rodolfo Lopez Castaneda a "courtesy ride" home from a local bar in the early morning hours.  The Government alleged that Defendant drove Castaneda to a construction site on Somerset Falls Drive in Bonita Springs, Florida, where he assaulted and forcibly took Castaneda's cellular phone.  (Doc. #3; Doc. #61).  Castaneda reported Defendant to the LCSO later that day, which resulted in Captain William Murphy of the LCSO questioning Defendant.  Defendant initially denied taking

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Castaneda to the Somerset Falls construction site, striking Castaneda in the face, and taking Castaneda's money and phone.  Later in the questioning, however, Defendant admitted to driving Castaneda to and leaving him at said construction site and to shoving Castaneda twice.  But, Defendant remained adamant that he did not take Castaneda's money and phone.

Following a six-day jury trial, Defendant was found guilty of depriving another of rights while acting under the color of law in violation of 18 U.S.C. § 242 (Count One)[2] and obstructing justice in violation of 18 U.S.C. § 1512(b)(3) (Count Two).  (Doc. #61; Doc. #3).  Defendant now timely moves for a judgment of acquittal as to Count Two and for a new trial.  The Court will address each motion in turn.

## STANDARDS OF REVIEW

### A. Judgment of Acquittal

Rule 29 of the Federal Rules of Criminal Procedure provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c).  The legal principles that apply in deciding such a motion are well established:

> In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  The prosecution need not rebut all reasonable hypotheses other than guilt.  The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury. The District Court's determination that the evidence introduced at trial was insufficient to support the jury's verdict of guilt is [an] issue of law entitled to no deference on appeal.

---

[2] In Count One, the jury specifically found that Defendant willfully deprived Castaneda of the right to be free from (1) the intentional use of excessive force by assaulting Castaneda, which resulted in bodily injury; and (2) the unreasonable seizure of property by forcibly taking Castaneda's cell phone, which resulted in bodily injury.  (Doc. #61).

*United States v. Miranda,* 425 F.3d 953, 959 (11th Cir. 2005) (internal citations omitted). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Friske,* 640 F.3d 1288, 1291 (11th Cir. 2011); *see also United States v. Hough*, __ F.3d __, 2015 WL 5234702, at *4 (11th Cir. Sept. 9, 2015).

**B.  New Trial**

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Unlike Rule 29, Rule 33 allows the district court to weigh the evidence and consider the credibility of the witnesses; however, to grant such a motion "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004).

## DISCUSSION

**A.  Defendant's Motion for Judgment of Acquittal**

The jury found that Defendant's statements to Captain Murphy violated 18 U.S.C. § 1512(b)(3), which criminalizes misleading statements to federal officials about a possible federal offense. Specifically, § 1512(b)(3) makes it a crime for anyone to "engage[ ] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States related to the commission or possible commission of a Federal Offense." Defendant seeks a judgment of acquittal, arguing that the evidence presented was insufficient to sustain this charge. (Doc. #70 at 2). Applying the above principles, the Court finds that

a reasonable jury could have found Defendant guilty of obstructing justice beyond a reasonable doubt.

Although presented as a challenge to the sufficiency of the evidence, the details of Defendant's argument make clear that he actually disputes how the jury weighed the evidence and credited the witnesses. (Doc. #70 at 2-3). Defendant rehashes evidence that, according to him, establishes the insufficiency of the Government's case. (Doc. #70 at 2-8). To the extent Defendant challenges the credibility of the Government's witnesses, the Court will not entertain such attacks because "questions of witness credibility are the 'exclusive province' of the jury[.]" *Hernandez*, 743 F.3d at 815 (citation omitted). Moreover, "'the jury was free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial.'" *Friske*, 640 F.3d at 1291 (citation omitted). It was "not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008) (internal quotation marks and citation omitted)). Contrary to Defendant's arguments, the verdict was neither capricious nor irrational.

Putting the issue of witness credibility aside and construing the trial testimony and other evidence in favor of the jury's verdict, as the Court is required to do, Defendant's conviction must be upheld. To illustrate, the jury watched a videotape of Captain Murphy questioning Defendant about his interaction with Castaneda. (Gov. Exs. 8 & 9). Defendant repeatedly told Captain Murphy that he did not leave Castaneda at the construction site on Somerset Falls Drive, he did not touch Castaneda, and he did not

4

take the victim's phone and money. (Gov. Exs. 8 & 9). Only after Captain Murphy confronted Defendant with contrary information did Defendant admit to stopping with Castaneda at said construction site, shoving him twice, and removing his phone from his pocket. (Gov. Exs. 8 & 9). Although Defendant remained adamant that he did not take Castaneda's phone, the jury found otherwise in Count One. (Doc. #61). Any one of these misleading statements is sufficient to support a conviction of obstruction of justice. Moreover, it was not necessary for the Government to prove that Defendant knew of the federal character of his illegal conduct, or that he was aware his actions were likely a civil rights violation. *See* Eleventh Cir. Pattern Jury Instructions (Criminal Cases) at 347 (2010). As a result, it was reasonable for a jury to determine that Defendant knowingly and willingly mislead Captain Murphy with the intent to either hinder, delay, or prevent the communication to a federal officer about this case as a possible civil rights violation under 18 U.S.C. § 242.

Relying on *Fowler v. United States*, 131 S.Ct. 2045, 2048 (2011), Defendant argues that the Government failed to prove there was a "reasonable likelihood" that any of the above falsities would have been made to a federal officer, thus rendering Count Two insufficient. (Doc. #70 at 8). In *Fowler*, the Supreme Court held that, to support a conviction under 18 U.S.C. § 1512, "the Government must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." In so holding, the Supreme Court rejected the Eleventh Circuit's "reasonably possible" standard, though not by much. *See id.* at 2052 (stating "[t]he Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not. . . . But the Government must

5

show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical.").[3]

Based on *Fowler*, Defendant avers that the Government did not meet the reasonable likelihood standard because (1) he did not make the misleading statements to any federal officer; (2) Special Agent James Roncinske of the Federal Bureau of Investigation contacted the LCSO only after he read about the underlying incident in the media the next day, which was after Defendant recanted some of his original story; and (3) no issues relating to a federal crime were addressed during Defendant's questioning. (Doc. #70 at 8-9; Doc. #80).  The Court is not convinced.  Defendant repeatedly denied leaving Castaneda at the construction site and touching him, but the subsequent investigation suggested otherwise (e.g., the GPS data from Defendant's patrol car on May 5, 2013, photographs of the victim's face, blood stained soil, etc.).  Moreover, the victim was an undocumented alien who had visible bruises on his face when he reported the incident.  Given these facts, the Court finds it reasonably likely that the LCSO would have communicated Defendant's violation of civil rights to federal investigators.  *See United States v. Veliz*, 800 F.3d 63, 66 (2d Cir. 2015) (finding that the defendant's multiple related crimes across multiple states was sufficient to support the jury's finding that communications with a federal investigator was reasonably likely).  That said, the evidence was more than sufficient for the jury to find, as it did, that Defendant was guilty of obstructing justice.

---

[3] In *United States v. Veal*, 153 F.3d 1233 (11th 1998), the Eleventh Circuit held that § 1512(b)(3) "does not require that a defendant know the federal nature of the crime about which he provides information because the statute criminal[izes] the *transfer* of misleading information which actually relates to a *potential* federal offense."  *Id.* at 1252 (emphasis in original).  Because of *Fowler*, a "reasonable likelihood" standard is controlling.  *See United States v. Chafin*, __ F.3d __, 2015 WL 6500852, at *7-8 (11th Cir. Oct. 28, 2015).

Accordingly, because there is no sound reason to set aside the jury's verdict on Court Two, the Court denies Defendant's motion.

**B. Defendant's Motion for a New Trial**

The Court turns now to Defendant's Motion for a New Trial under Rule 33. (Doc. #71). According to Defendant, he is entitled to a new trial because (1) the Court erred in not reading a self-defense instruction to the jury; (2) Assistant United States Attorney Jesus Casas made a statement during his rebuttal closing argument that mislead the jury; and (3) the evidence presented at trial did not establish obstruction of justice as alleged in Count Two of the Indictment. (Doc. #71 at 2).

   1. Self-Defense Jury Instruction

Defendant argues that he is entitled to a new trial because the Court failed to instruct the jury separately on self-defense. (Doc. #71 at 2-9; Doc. #79 at 1-2). The Court disagrees.

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Matthews v. United States, 485 U.S. 58, 63 (1988). If the proposed instruction presents a valid defense and there has been "some evidence" adduced at trial in support, a trial court may not refuse to charge the jury on that defense. See United States v. Ruiz, 59 F.3d 1151, 1154 (11th Cir. 1995). The burden of presenting evidence sufficient to support a jury instruction on a theory of self-defense is "extremely low." Id. "The defendant is entitled to have presented instructions relating to a theory of defense for which there is *any foundation* in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." United States v. Lively, 803 F.2d 1124,

1126 (11th Cir. 1986) (internal marks omitted).  In this inquiry, the court must view the evidence in the light most favorable to the accused. *See Ruiz,* 59 F.3d at 1154.

The undersigned held a charge conference after the conclusion of the parties' proof but before closing arguments.  (Doc. #56; Doc. #57).   At that time, Defendant proposed the following self-defense instruction based on the Sixth Circuit's pattern jury instruction:

> One of the questions in this case is whether the Defendant acted in self defense.
>
> A person is entitled to defend himself against the immediate use of unlawful force.  But the right to use force in self defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.
>
> The government has the burden of providing the defendant did not act in self defense.  For you to find the defendant guilty, the government must prove that it was not reasonable for the Defendant to think that the force he used was necessary to defend himself against an immediate threat.  Unless the government proves this beyond a reasonable doubt, you must find the Defendant not guilty.

(Doc. #42).  The Court heard Defendant's arguments as to why he was entitled to the self-defense instruction – those same arguments are echoed in the instant motion. Having paid close attention to the evidence and testimony at trial, and upon considering the relevant case law, the Court found that there was no evidence and testimony, beyond defense counsel's arguments, that Defendant acted in self-defense to warrant an instruction.   The Court finds the same now.

Even viewing the evidence in the light most favorable to Defendant and considering the "extremely low" burden he must meet, the Court still finds – as it did before – that Defendant did not provide any foundation from which a jury could conclude that he acted in self-defense. Defendant's principle basis for the instruction is that he told Captain Murphy on May 5, 2013, that he pushed the victim twice, the second of which occurred

8

after the victim "came back." (Gov. Ex. 8 at 61). However, this statement does not even suggest that Defendant perceived Castaneda to be any threat or that he pushed the victim to defend himself against harm.

Defendant also points to Sergeant Eric Nalewaik's testimony that he observed Castaneda demonstrate to LCSO Deputy Juan Santos how Castaneda purportedly "turned and contested" (Doc. #71 at 6) Defendant during the underlying incident. Sergeant Nalewaik's observation is undercut by salient facts that are conspicuously absent from Defendant's argument. Specifically, hours after Castaneda reported Defendant to the LCSO, Sergeant Nalewaik and Deputy Santos brought Castaneda to the Somerset Falls construction site. There, Castaneda and Deputy Santos conversed in Spanish, and Deputy Santos translated for Sergeant Nalewaik because he did not speak Spanish. While Castaneda and Deputy Santos were talking, Sergeant Nalewaik testified that he observed Castaneda show Deputy Santos that Defendant removed him from the patrol vehicle; he placed his hands on the car, and, when Defendant reached into his pockets, he turned and a struggled ensued. Defense counsel then asked Sergeant Nalewaik whether Castaneda also indicated to Deputy Santos that he "contested". Sergeant Nalewaik testified that it seemed like Castaneda was describing to Deputy Santos that he was contesting what had happened to him. Notably, neither Deputy Santos nor Castaneda testified that Castaneda turned and contested Defendant at any time during the incident. Consequently, Sergeant Nalewaik's "turned and contested" testimony did not lay any foundation for a self-defense instruction.

Finally, although the Court did not read a specific self-defense instruction to the jury, its instructions on "willfulness," the third element of a deprivation of civil rights with

9

bodily injury (Count One), fairly and adequately encompassed Defendant's theory that he shoved Castaneda in self-defense. ([Doc. #60 at 9, 14-15](#)). The absence of a specific self-defense instruction, therefore, did not impair Defendant's ability to advance that defense. *See [United States v. Teal, 299 F. App'x 387, 389 (5th Cir. 2008)](#).* The Court also allowed Defendant to argue self-defense in closing arguments, which he did, and the jury was able to consider such arguments in its deliberations.

In sum, Defendant did not adduce any evidence of self-defense. The jury instructions were proper and adequately covered the pertinent issues. Therefore, this portion of Defendant's motion is denied.

2. <u>Alleged Prosecutorial Misconduct</u>

Next, Defendant argues that AUSA Casas' statement that "the defendant threw the phone out of the window of his car [as] he was going north on 41, and the evidence supports that" mislead the jury. ([Doc. #71 at 2](#)). To find prosecutorial misconduct, a two-element test must be met: "'(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant.'" [*United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998)](#) (citations omitted). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." *[Id.](#)*

Here, AUSA Casas' statement was based on circumstantial evidence presented at trial, including the condition of the phone when found, the direction that Defendant drove after leaving the victim, and the testimony of Captain Joslin. Accordingly, it was not baseless, improper, nor prejudicial. Moreover, as Defendant acknowledges, he failed to object to AUSA Casas' statement at trial. ([Doc. #71 at 16](#)). The Court, therefore,

concludes that AUSA Casas' statement did not affect Defendant's substantial rights and did not deprive him of a fair trial. As such, Defendant's motion for a new trial on this ground is denied.

3. <u>Alleged Insufficient Evidence to Establish Obstruction of Justice</u>

In deciding a motion for new trial, the district court may weigh the evidence and determine credibility for itself. Having heard the evidence, the Court fully agrees with the obstruction of justice verdict. As with most cases, the Government's evidence was not without defects and was ably challenged by Defendant. Nevertheless, the Court found the Government's witnesses credible, and the testimony and evidence justified the verdict reached by the jury. In sum, this case does not present such an extraordinary situation that would necessitate a new trial.

Accordingly, it is now

**ORDERED:**

(1) Defendant Michael Ronga's Motion for Judgment of Acquittal (Doc. #70) is **DENIED**.

(2) Defendant Michael Ronga's Motion for New Trial (Doc. #71) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 5th day of November 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record